IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 10-cv-02532-PAB

REBECCA FRANKLIN,

      Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

      This matter comes before the Court on plaintiff Rebecca Franklin's complaint

[Docket No. 3], filed on October 18, 2010.  Plaintiff seeks review of the final decision of

defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for disability

insurance benefits and supplemental security income under Titles II and XVI of the

Social Security Act (the "Act"), 42 U.S.C. §§ 401-33 and 1381-83c.[1]  The Court has

jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).

**I. BACKGROUND**

      On July 19, 2007, plaintiff filed an application for disability benefits, alleging that

she had been disabled since September 22, 2006.  After an initial administrative denial

of plaintiff's application on February 15, 2008, an administrative law judge ("ALJ") held a

hearing on June 18, 2009.  In a decision dated December 28, 2009, the ALJ denied

plaintiff's claim.

_____

[1]Neither party has requested oral argument. *See* Docket No. 11 at 2, ¶ 9.

The ALJ concluded that plaintiff had the "following severe impairments: migraine headaches; degenerative disc disease, status post 2-level cervical fusion, with cervicothoracic myofascial pain; chronic low back pain with scoliosis and multilevel mild facet arthropathy."  R. at 13.  The ALJ determined that these impairments, alone or in combination, did not meet one of the regulations' listed impairments.  *See* R. at 15. The ALJ found that plaintiff retained the residual functional capacity ("RFC") to

> perform light work as defined in 20 C.F.R. [§] 404.1567(b) and [§] 416.967(b) except standing/walking would be limited to 4 to 6 hours out of an 8-hour workday; pushing/pulling with the bilateral upper extremities would be limited to the light exertional level; no climbing of ladders, ropes or scaffolds; stooping, crawling, crouching and kneeling would be limited to occasional; bilateral overhead reaching would be limited to occasional; there would be frequent positional changes due to the claimant's neck; and avoidance of moderate exposure to extreme cold and vibration.

R. at 15.  The ALJ concluded, based upon this RFC and in reliance on the testimony of a vocational expert ("VE"), that plaintiff was not disabled because "jobs . . . exist in significant numbers in the national economy that the [plaintiff] can perform."  R. at 21-22.  On August 17, 2010, the Appeals Council declined plaintiff's request for review of this decision, rendering it the final decision of the Commissioner.

## II. ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *See Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  The district court may not reverse an ALJ simply because the court may have reached a different result based on the

record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  The district court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070.  Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## B.  The Five-Step Evaluation Process

To qualify for disability benefits, a claimant must have a medically determinable physical or mental impairment expected to result in death or last for a continuous period of twelve months that prevents the claimant from performing any substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(1)-(2).

Furthermore,

[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy

exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).  The Commissioner has established a five-step

sequential evaluation process to determine whether a claimant is disabled.  20 C.F.R.

§ 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  The steps of the

evaluation are:

> (1) whether the claimant is currently working; (2) whether the claimant has
> a severe impairment; (3) whether the claimant's impairment meets an
> impairment listed in appendix 1 of the relevant regulation; (4) whether the
> impairment precludes the claimant from doing his past relevant work; and (5)
> whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R.

§ 404.1520(b)-(f)).  A finding that the claimant is disabled or not disabled at any point in

the five-step review is conclusive and terminates the analysis.  *Casias v. Sec'y of*

*Health and Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability.  However,

"[i]f the claimant is not considered disabled at step three, but has satisfied her burden of

establishing a prima facie case of disability under steps one, two, and four, the burden

shifts to the Commissioner to show the claimant has the residual functional capacity

(RFC) to perform other work in the national economy in view of her age, education, and

work experience."  *See Fischer-Ross v. Barnhart,* 431 F.3d 729, 731 (10th Cir. 2005);

*see also Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5 (1987).  While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform

himself about facts relevant to his decision and to learn the claimant's own version of

those facts." *Hill v. Sullivan,* 924 F.2d 972, 974 (10th Cir. 1991).

4

### C.  The ALJ's Decision

Plaintiff argues that the RFC should have included limitations resulting from plaintiff's migraine headaches.  At step two of the sequential analysis, the ALJ concluded that "migraine headaches" constituted a "severe impairment."  Pursuant to the regulations, a "severe impairment" is an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a).  "Basic work activities . . . mean the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).  According to the regulations, examples of "basic work activities" include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).  "[A]t step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on h[er] ability to work."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).  Here, the ALJ concluded that plaintiff made a threshold showing that her migraine headaches significantly limit her ability to do basic work activities. *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

At step four, the ALJ was required to consider all of a claimant's impairments

and limitations, even those that are not severe.  *See* 20 C.F.R. § 404.1520(e) ("If your

impairment(s) does not meet or equal a listed impairment, we will assess and make a

finding about your residual functional capacity based on all the relevant medical and

other evidence in your case record, as explained in § 404.1545."); 20 C.F.R.

§ 404.1545(a)(2) ("We will consider all of your medically determinable impairments of

which we are aware, including your medically determinable impairments that are not

'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess

your residual functional capacity.").  "[S]tep four requires a more detailed analysis of the

claimant's impairments than is required at step two as the ALJ must specifically analyze

the impact the impairments have on the claimant's ability to do the work [s]he has

previously done."  *Hinkle*, 132 F.3d at 1352.  Here, at step four of the analysis, the ALJ

concluded that "there is a total lack of objective evidence in the record that

substantiates [plaintiff's] allegations in regard to her migraines."  R. at 21.  The ALJ

"acknowledge[d] that the claimant clearly has severe impairments which restrict her

ability to perform work-related activities," but that they are "adequately accounted for"

by the RFC, R. at 21, which did not include any apparent migraine-related limitations.

Plaintiff argues that the ALJ erred by failing to include limitations in the RFC

relating to her migraines despite having concluded that they constituted a severe

impairment at step two.  However, the "step two and step five determinations require

different levels of severity of limitations such that the satisfaction of the requirements at

step two does not automatically lead to the conclusion that the claimant has satisfied

the requirements at step five."  *Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007).

Simply because plaintiff established a "severe impairment," which only "requires a 'de

minimis' showing of impairment," *Hinkle*, 132 F.3d at 1352, does not *necessarily* require

that the ALJ conclude that the impairment materially erodes plaintiff's RFC.  *See Perez*

*v. Astrue*, 2012 WL 609934, at *10 (N.D. Okla. Feb. 24, 2012) ("[I]mpairments are not

included in the RFC determination; instead, the functional limitations from the

impairments are what constitute the ALJ's RFC determination.").

    With that said, concluding that an impairment is severe at step two is relevant to

plaintiff's functional capacity because only those impairments that significantly limit a

plaintiff's ability to do basic work activities qualify as "severe."  The ALJ's conclusion

that migraines imposed no limitations was based in part on the absence of any

"objective" evidence of migraines.  *See* R. at 21.  The ALJ, however, failed to explain

what form such evidence would have taken in this case.  *See Creel v. Wachovia Corp.*,

2009 WL 179584, at *8 n.20 (11th Cir. Jan. 27, 2009) ("Neither party has identified any

objective tests that would automatically establish the existence of neurologically-based

migraines, and there appears to be no set standard for establishing the existence of

migraines.") (citing *Thompson v. Barnhart*, 493 F. Supp. 2d 1206, 1215 (S.D. Ala. 2007)

("neither the SSA nor the federal courts require that an impairment, including migraines,

be proven through objective clinical findings"); *Ortega v. Chater*, 933 F. Supp. 1071,

1075 (S.D. Fla. 1996)); *see also Carlson v. Astrue*, 2010 WL 5113808, at *12 (D. Minn.

Nov. 8, 2010) ("Because migraines constitute a subjective complaint, objective

evidence conclusively showing whether a person suffers from them is impossible to

find.").

    Furthermore, the record did contain relevant evidence substantiating plaintiff's

complaints regarding migraine headaches.[2]  For example, on April 27, 2006, Dr.

Sheldon J. Ravin noted in the "Assessment/Plan" section of a medical record that

plaintiff suffered from "[c]hronic pain syndrome with recurring headaches" and

"[m]igraine headaches."  R. at 188; *see* R. at 189 (April 13, 2006 visit).  On April 2,

2007, plaintiff was treated by a primary care physician named Dr. Robert H. Reeves,

who noted that plaintiff "state[d] she feels like she has a migraine" and that she reported

a history of migraines "which seem to be worse since having neck surgeries."  R. at

191; *see* R. at 195 (reporting to Dr. Steven M. Benecke on May 9, 2007 that she has a

"history of migraine disorders for which she takes [medication] on occasion.");  *see also*

R. at 214 (reporting that she "has had a migraine [for ]3 days"); R. at 377 (where Dr.

Jeffrey A. Perry noted history of migraines on April 18, 2008).[3]

On January 15, 2008, plaintiff was transported to the hospital by ambulance due

to a migraine which caused "shaking spells."  R. at 200.  Plaintiff stated that this

migraine felt like her others, resulting in "white shimmering lights, pain behind [her] left

eye, retroorbital [headache], [and] nausea."[4]  *Id.*  The treating doctor described plaintiff

---

[2]As the ALJ recognized, plaintiff identified migraines as her main concern. R. at
21; *see* R. at 33.  "At the hearing, [plaintiff] testified that the 2 to 3 migraine headaches
she gets per month cause her the most problem, for which she takes [medication]," and
she "testified that when the medication does not help, the headaches will last 2 to 3
days during which time she is incapacitated."  R. at 16; *see* R. at 35 (testifying that,
when medication is effective, the migraines last for five hours).

[3]Dr. Reeves prescribed medication for plaintiff's migraines.  *See* R. at 192.

[4]Plaintiff also reported that her medication "always works for her" but that she
could not afford it.  R. at 200; *see* R. at 212 (where plaintiff informed Dr. Jeffrey A. Perry
on December 20, 2007 that her migraines had been helped by medication but that she
could not afford it).

as "present[ing] with [a] description of [a] classic migraine." R. at 205; *see Mehrnoosh v. Astrue*, 2011 WL 2173809, at *7 (D. Or. June 2, 2011) ("[W]hile there may not be a laboratory or blood test to confirm a migraine disorder, and it may be that radiologic studies do not always reveal an objectively-defined source of migraine pain, it is possible to present objective-like evidence to establish the severity of the claimed impairment such as the treating physician's personal observations of any physical manifestations of pain, chart notes reflecting ongoing attempts at treatment with medication(s), trips to the emergency room or hospital admissions for disabling migraine pain, a record of associated symptoms, or other similar evidence."); *see Carlson*, 2010 WL 5113808, at *12 ("[D]octors diagnose migraines through medical signs and symptoms such as nausea, vomiting, photophobia, sensitivity to sound."); *see also Latham v. Commissioner of Social Sec.*, 2009 WL 1605414, at *10 (N.D.N.Y. June 5, 2009) ("Based upon his review of plaintiff's medical records, and in particular her failure to complain of photophobia, nausea or vomiting, all of which would constitute objective corroborating evidence of migraines, [a doctor] opined that plaintiff's headaches were not of sufficient duration or frequency to qualify as migraines.").

Dr. Velma L. Campbell conducted a consultative exam of plaintiff on April 16, 2009 at the behest of plaintiff's counsel. Plaintiff told Dr. Campbell that she has migraines "several times a month" and that they are "worse with increased neck pain." R. at 389. Dr. Campbell concluded that the migraines, as described, "would interfere with keeping to schedules and routines needed for work activities, as well as productivity." R. at 393. Plaintiff's primary care physician, Dr. Vui Mai, completed a

questionnaire on May 27, 2009, wherein she indicated that she had diagnosed plaintiff

with migraines, that the migraines occurred two to three times per month and typically

lasted two to three days, and that plaintiff would be incapable of functioning on a job

when suffering from a migraine.  *See* R. at 398.

Despite the foregoing evidence, upon which one may assume the ALJ relied in

finding the migraines severe at step two, *see* R. at 14, the ALJ appears to have limited

his consideration of the migraines at step four to the opinion of Dr. Mai.  In assessing

plaintiff's RFC, the ALJ concluded that Dr. Mai's May 27, 2009 opinion was inconsistent

with her April 1, 2009 treatment notes indicating that plaintiff "reported no headache"

and had medical conditions that were "stable."  R. at 20; *see* R. at 321.  The absence of

a headache on a particular day is not inconsistent with the description of plaintiff's

migraine condition.  Furthermore, the ALJ fails to identify the medical evidence upon

which he relied when concluding that the reported stability of plaintiff's "other medical

conditions" indicated that the migraines imposed no limitations relevant to plaintiff's

RFC.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (stating that an

ALJ "may reject a treating physician's opinion outright only on the basis of contradictory

medical evidence and not due to his or her own credibility judgments, speculation or lay

opinion") (quotation and emphasis omitted); *cf. Carlson*, 2010 WL 5113808, at *12

("Plaintiff's doctors continuously found that she suffered from migraines and

experienced migraine symptoms, such as nausea and sensitivity to light and sound.  In

fact, the record does not contain any statements by doctors questioning the frequency

or severity of Plaintiff's migraine headaches.") (citations omitted).  For these reasons,

the Court concludes that the ALJ's failure to include any limitations deriving from

plaintiff's migraines was not supported by substantial evidence.

Plaintiff also argues that the ALJ did not have an adequate basis for rejecting Dr. Mai's and Dr. Campbell's opinions.  The Commissioner must "always consider the medical opinions in [a claimant's] case record" and "make findings about what the evidence shows."  20 C.F.R. § 416.927(b)-(c).  Explaining how an ALJ will weigh medical opinions, subsection 416.927(d) lists the following factors to be considered: examining relationship, treatment relationship, supportability, consistency with the record as a whole, and specialization.  A treating source, such as Dr. Mai, may be given controlling weight among the medical evidence in a claimant's case record under certain circumstances.  *Id.* at § 416.927(d)(2).  Whether a treating source is given controlling weight or not, the regulation guarantees that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  *Id.*  In short, the Commissioner must consider all medical opinion evidence and set forth the reasons why a particular weight was assigned to treating sources and other medical sources.  Failure to follow this rule by not providing adequate reasons for an ALJ's decision constitutes reversible error.  *See Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir. 1988).  The Court has already discussed the ALJ's evaluation of some of the medical evidence from Dr. Mai.  The Court need not delve any deeper into plaintiff's arguments regarding the weighing of medical evidence.  Upon remand, the ALJ will have the opportunity to reevaluate plaintiff's RFC and address Dr. Mai's and Dr. Campbell's opinions in light of the entire record.

Plaintiff also points out that the ALJ incorrectly believed that the "state agency medical consultant," upon whom the ALJ relied, reviewed plaintiff's "entire" medical file,

*see* R. at 18.[5]   The ALJ will be revisiting the RFC determination, which may moot that

concern as well.   Similarly, the Court need not resolve whether the ALJ's function-by-

function analysis in reaching the RFC was sufficient, as the step four analysis on

remand may adequately address this concern.[6]   *See Watkins v. Barnhart*, 350 F.3d

1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by

appellant because they may be affected by the ALJ's treatment of this case on

remand."); *see also Daniell v. Astrue*, 384 F. App'x 798, 804 (10th Cir. 2010) ("We will

not reach the remaining issues raised by Ms. Daniell because they may be affected by

the ALJ's resolution of this case on remand.").

## III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the decision of the Commissioner that plaintiff was not disabled

is REVERSED and REMANDED for further proceedings consistent with this opinion.

---

[5]The state agency medical consultant completed the Physical Residual Functional Capacity Assessment in February 2008 and indicated that no treating source statements were in the file. *See* R. at 228.  The medical consultant did not have the opportunity to address Dr. Mai's opinion or the records of Dr. Campbell's consultative exam on April 16, 2009.  Indeed, the majority of the medical records in the record post-date the medical consultant's opinion.

[6]The RFC includes a standing and walking limitation of "4 to 6 hours" in an eight hour workday.  R. at 15.  The VE testified that a standing and walking limitation of 4 hours per day, along with plaintiff's other limitations, would eliminate all jobs.  At 6 hours per day, the VE was able to identify jobs in the national economy that plaintiff could perform.  It is not entirely clear whether, in the current RFC, plaintiff is able, "on a regular and continuing basis," to stand and walk 4 hours, 6 hours, or some other indeterminate amount of time between these numbers which may or may not preclude her ability to work.  *See* Social Security Ruling 96-8p, 1996 WL 374184 (July 2, 1996) (emphasis omitted).  The ALJ will be afforded the opportunity to address that issue in the first instance on remand.

DATED March 28, 2012.

BY THE COURT:


 s/Philip A. Brimmer                                    
PHILIP A. BRIMMER
United States District Judge